UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| MEGAN ANN JACKSON,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO, Commissioner of the Social Security Administration,<br><br>Defendant. | CAUSE NO. 2:25cv165 DRL-SJF |

OPINION AND ORDER

Megan Ann Jackson appeals the Social Security Commissioner's final judgment denying her supplemental social security income. She requests remand of her claim for further consideration. Having reviewed the underlying record and the arguments on appeal, the court remands the Commissioner's decision.

BACKGROUND

Ms. Jackson suffers from a variety of severe impairments including anxiety, major depressive disorder, panic disorder (without agoraphobia), mild lumbar facet arthropathy and mild bilateral S1 radiculopathies, Meniere's disease (chronic ear disorder that causes sudden vertigo, ringing, and hearing loss), Raynaud's syndrome (limiting blood flow in the extremities), migraine with aura and vertigo, irritable bowel syndrome, moderate hypersomnia, and fibromyalgia with several co-occurring conditions [R. 12, 391, 525, 902].

She filed for Title II disability insurance benefits on January 15, 2023 [R. 207-16], alleging disability since March 1, 2018 [R. 207]. She was 44 years old when she applied for these benefits. She has a high school education and three additional years of college education [R. 256]. Before

filing for disability, she most recently worked as a verbatim hearing reporter for the Social Security Administration [R. 257].

The Social Security Administration denied Ms. Jackson's initial application on May 10, 2023, and her request for reconsideration on October 23, 2023 [R. 10]. Administrative Law Judge (ALJ) Alice Blackmore, following a review of records and a May 2, 2024 hearing, denied Ms. Jackson's claim on May 22, 2024 [R. 23]. On February 3, 2025, the Appeals Council denied her request for review [R. 1]. On April 8, 2025, Ms. Jackson timely appealed under 42 U.S.C. § 405(g).

STANDARD

The court has authority to review Appeals Council decisions under 42 U.S.C. § 405(g); however, review is bound by a strict standard. The ALJ's findings, if supported by substantial evidence, are conclusive and nonreviewable. *See Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is that evidence that "a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and may well be less than a preponderance of the evidence, *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). If the ALJ has relied on reasonable evidence and built an "accurate and logical bridge between the evidence and her conclusion," the decision must stand. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (quotation omitted). Even if "reasonable minds could differ" concerning the ALJ's decision, the court must affirm if the decision has adequate support. *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)). This high deference is lessened whenever the ALJ's findings are built on errors of fact or logic. *Thomas*, 745 F.3d at 806.

DISCUSSION

An individual is disabled when she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment [that] can be expected to result in death or [that] has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). This impairment must be so severe that the individual "is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work [that] exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work." 42 U.S.C. § 423(d)(2)(A).

When considering a claimant's eligibility for disability benefits, an ALJ must apply a standard five-step analysis, asking whether (1) the claimant is currently employed, (2) the claimant's impairment or combination of impairments is severe, (3) her impairments meet or exceed any of the specific listed impairments that the Secretary acknowledges to be so severe as to be conclusively disabling, (4) the claimant can perform her former occupation, if the impairment has not been listed as conclusively disabling, given the claimant's residual functioning capacity, and (5) the claimant can perform other work in the national economy given her age, education, and work experience. 20 C.F.R. § 404.1520; *Young v. Sec'y of Health & Hum. Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). The claimant bears the burden of proof until step five, when the burden shifts to the Commissioner to prove that the claimant can perform other work in the economy. *Young*, 957 F.2d at 389.

At step one, the ALJ determined that Ms. Jackson hadn't engaged in substantial gainful activity during the period from her alleged onset date of March 1, 2018 through her date last insured of March 31, 2021, so proceeded to step two [R. 12]. There, the ALJ determined that Ms. Jackson had several severe impairments, including major depressive disorder, generalized anxiety disorder, panic disorder, fibromyalgia, lumbar facet arthropathy, bilateral S1 radiculopathies, Meniere's disease, Raynaud's syndrome, migraine with aura, migrainous vertigo, irritable bowel syndrome, and moderate hypersomnia [*id.*]. The ALJ also found that Ms. Jackson had two non-severe impairments: post-cholecystectomy syndrome and mild obesity, both of which in the judge's estimation did not contribute to any functional loss greater than what had been already accommodated by way of limitations from her severe impairments [R. 13]. At step three, the ALJ decided Ms. Jackson's severe impairments didn't meet or equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 [*id.*].

The ALJ thus proceeded to step four, where the judge concluded that Ms. Jackson had the residual functional capacity (sometimes called an RFC) to perform light work as defined in 20 C.F.R. § 4041567(b), subject to certain limitations [R. 16]. The administrative decision noted that Ms. Jackson could "frequently climb ramps and stairs but never ladders, ropes, or scaffolds" and could "frequently balance, stop, kneel, crouch, and crawl" [*id.*]. The ALJ explained that Ms. Jackson could "tolerate no exposure to hazards," but could "tolerate occasional interaction with coworkers, supervisors, and the public" [*id.*]. Accordingly, the ALJ determined Ms. Jackson was unable to perform any past relevant work [R. 21].

Finally, at step five, the ALJ considered Ms. Jackson's age, education, work experience, and residual functioning capacity to conclude that there were 462,000 jobs in the national

economy she could perform: housekeeping cleaner (175,000), routing clerk (122,000), and marker (165,000) [R. 22]. Based on this analysis, the ALJ concluded that she wasn't disabled from March 1, 2018 through March 31, 2021 [R. 23]. Benefits were denied.

Ms. Jackson appeals the administration's decision, first arguing that the decision erred in assessing her subjective complaints. An ALJ follows a two-step process to evaluate a claimant's subjective complaints. The ALJ first must determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. §§ 404.1529(a), (b); SSR 16-3p, 81 Fed. Reg. 14166, 141667 (Mar. 16, 2016). Once a qualifying impairment has been established, the ALJ must evaluate the intensity and persistence of the claimant's symptoms to determine the extent to which they impose work-related functional limitations. 20 C.F.R. §§ 404.1529(a), 416.929(a).

Because an ALJ is best positioned to evaluate a witness's credibility, the ALJ's consideration of a claimant's testimony about her symptoms is entitled to "special deference." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). If the ALJ's determination is grounded in the record and she articulates her analysis "at least at a minimum level," *Ray v. Bowen*, 843 F.2d 998, 1002, (7th Cir. 1988) (citation omitted), creating "an accurate and logical bridge between the evidence and the result," *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) (citation omitted), her determination will be upheld unless it is "patently wrong," *Powers*, 207 F.3d at 435; *see Ray v. Berryhill*, 915 F.3d 486, 490 (7th Cir. 2019) (it is a "rare case in which the claimant can overcome the 'considerable deference' [the court] afford[s] such findings unless they are 'patently wrong'") (quoting *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009)).

Federal regulations list many factors an ALJ should consider when evaluating a claimant's symptoms, including pain. 20 C.F.R. §§ 404.1529(c), 416.929(c). These factors include the objective medical evidence; the claimant's prior work record; statements made by the claimant about her symptoms; the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken for symptoms; treatment for symptoms (other than medication); and any other measures used to relieve symptoms. 20 C.F.R. §§ 404.1529(c)(1-3), 416.929(c)(1-3).

The ALJ found that, though Ms. Jackson's medically determinable impairments could reasonably be expected to cause the alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of her symptoms weren't consistent with the record [R. 18]. To be clear, it seems this conclusion was reached without articulating reasons that would be given particular deference, say, based on the claimant's demeanor or credibility while testifying. *See, e.g., Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) (remanding an ALJ's consideration of a claimant's symptom testimony because the decision was based on "serious errors in reasoning rather than merely the demeanor of the witness"). A lack of medical evidence alone is an insufficient reason to discredit testimony, and Ms. Jackson zeroes in on this critique to conceive a first error. *See Clifford v. Apfel*, 227 F.3d 863, 871-72 (7th Cir. 2000); *see Vanprooyen v. Berryhill*, 864 F.3d 567, 572 (7th Cir. 2017) ("ALJ may not discredit a claimant's testimony about her pain and limitations solely because there is no objective medical evidence supporting it.") (quotations and citation omitted). The Commissioner responds that the ALJ's stated focus was the entire record, not just medical evidence.

Although in many ways thorough and well-written, the administrative decision left the basis for discrediting Ms. Jackson's subjective complaints murky. The administrative decision at one point articulated that these symptoms were "not entirely consistent with the medical evidence," but carefully, it seems, added in name "other evidence in the record" too [R. 18]. The decision later reiterated that the claimant's statements about the intensity, persistence, and limiting effects of her symptoms were "inconsistent with the record" [*id.*]. That suggests a broader perspective than merely a lack of objective medical evidence. But later still, the administrative decision clarified that light work would adequately address the location, duration, frequency, and intensity of the claimant's symptoms "to the extent that such symptoms and aggravating factors are supported by objective medical evidence and clinical findings" [R. 21]. It echoed that the claimant had not presented "objective medical evidence or clinical findings" to establish impairments that would result "in any greater degree of limitation" [R. 20-21]. So was it merely the absence of objective medical evidence that caused the ALJ to discredit Ms. Jackson's statements about her limiting symptomatology or something more that could be found in the record? The court must look beyond these mere words to see what reasons the administrative decision actually articulated—what logical bridge was built—to discredit Ms. Jackson's subjective complaints.

In doing so, the court sees that the administrative decision, at most, used the lack of objective medical evidence to discredit her statements about her symptoms, but really nothing else that the Commissioner can pinpoint in the rationale. The court likewise cannot find another rationale articulated in the administrative decision. Reliance merely on the lack of objective

medical evidence in discounting Ms. Jackson's symptoms was error. *See Vanprooyen*, 864 F.3d at 572; *Clifford*, 227 F.3d at 871-72.

Take for instance her fibromyalgia, a "chronic health condition that causes pain all over the body and other symptoms." *Kennedy v. Lilly Extended Disability Plan*, 856 F.3d 1136, 1137 (7th Cir. 2017). The severity of this condition often is not captured by ordinary objective testing. *See Vanprooyen*, 864 F.3d at 572 (finding that fibromyalgia cannot be measured with objective tests aside from a trigger-point assessment). Given the difficulty of evaluating fibromyalgia, the Social Security Administration has issued guidance specific to this condition. SSR 12-2p, 77 Fed. Reg. 43640 (July 25, 2012); *see Wilder v. Kijakazi*, 22 F.4th 644, 653 (7th Cir. 2022) ("Social Security Rulings lack the force and effect of law, but they are binding on ALJs.").

The administrative decision noted that Ms. Jackson presented with multiple tender points in "some examinations" [R. 18], yet it never says how this evidence factored into the RFC. *See Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009) (decision "must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling"). And though the decision recognized her fibromyalgia and cited some evidence of improvement or management—including a notation that Ms. Jackson should return to rheumatology only as needed because "the neurologist [was] doing a great job" treating her fibromyalgia [R. 525]—that isolated sign of improvement doesn't suffice under SSR 12-2p. "In evaluating the impact of fibromyalgia as part of the RFC assessment, the ALJ must consider a *longitudinal* record whenever possible because symptoms of fibromyalgia can wax and wane so that a person may have good days and bad days." *Swiecichowski v. Dudek*, 133 F.4th 751, 758 (7th Cir. 2025) (citing SSR 12-2p) (quotations omitted). The decision here

discusses tender points, largely mild imaging, mostly normal gait, and sporadic specialty treatment, but it never explains whether Ms. Jackson's pain and fatigue were considered holistically over time in light of the condition's fluctuating nature. Numerous visits over several years note generalized pain, joint swelling, and pain in her muscles and joints [R. 386, 398, 418, 472, 524, 527, 530-32, 754-55, 761]. But the decision doesn't adequately explain why certain normal testing undermined Ms. Jackson's allegations of pain. In fibromyalgia cases, such findings don't necessarily undercut symptom severity. *See Swiecichowski*, 133 F.4th at 759 ("given the unique nature of fibromyalgia and the large number of medical visits here, it is not clear from this record whether the ALJ evaluated the medical reports of [the plaintiff's] pain holistically over time, keeping in mind that the symptoms of fibromyalgia may manifest in an *inconsistent* fashion"). And whether she was friendly or cooperative at the doctor's office, as the government argues in defense, says little about whether she was experiencing pain over time.

As to her mental health conditions, the decision concluded that Ms. Jackson had no more than a mild limitation with concentrating, persisting, or maintaining pace, and noted that the record didn't document problems with missing appointments or otherwise not following through with personal responsibilities [R. 15]. But the record shows her anxiety did in fact, on several occasions, interfere with her ability to attend appointments or continue relationships with providers. For example, on one occasion, she reported having a panic attack in a provider's office after waiting a long time for her appointment and then leaving the office [R. 259]. Another time, Ms. Jackson felt too anxious to travel to her doctor's office for an in-person appointment for migraine and vertigo treatment [R. 262]. She also reported other occasions when her anxiety interfered with her ability to seek care [R. 268, 273, 274, 278]. Finally, Ms. Jackson says on one

occasion she felt guilty after declining to interact with her son [R. 908]. In passing over these instances and declaring their absence, the decision errs. This isn't a matter of reweighing the evidence—that remains the ALJ's task—but a contradiction in reasoning. And, once more, to the extent that the decision dismissed the severity or recurring nature of her mental health conditions based on "normal" or "temporary" exam findings, this provides an insufficient basis for discounting her subjective symptoms.

Additionally, the decision concluded that Ms. Jackson's mental health conditions appeared to "benefit from treatment" [R. 16], but it remains unclear whether the ALJ considered contrary evidence suggesting that Ms. Jackson's symptoms persisted, fluctuated, and at times worsened despite treatment. The record includes reports that her depression and anxiety worsened during the COVID-19 pandemic, to the point she was too scared to talk on the phone [R. 278], that she "struggled to find medications that consistently help with her depression and anxiety" [R. 559], that medication wasn't leading to much change in her symptoms and was leading her to feel sleepier [R. 897], and that worsening symptoms left her nearly homebound [R. 908], just as examples. Although the record also contains some indications of partial improvement—for example, a report that since starting therapy her condition was either "about the same" or "a little better" [R. 902]—the decision never articulates whether or how the ALJ weighed these competing signs.[1] *See Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016) ("An ALJ cannot recite only the evidence that supports his conclusion while ignoring contrary evidence. This 'cherrypicking' is especially problematic where mental illness is at issue, for a person who suffers

[1] Notably, in the same appointment where Ms. Jackson indicated possible improvement, she still reported that her anxiety was stable yet elevated, that she remains depressed most days, and that her depression was severe [R. 902-03].

from a mental illness will have better days and worse days, so a snapshot of any single moment says little about [their] overall condition.") (citation and quotations omitted). This error too requires remand.

As to migraines, the decision acknowledged that Ms. Jackson reported suffering from these 3-5 times a month, was diagnosed with vestibular migraine, and received injections, but also noted that she did not return for additional treatment as instructed [R. 17-19]. To the extent the ALJ relied on that lack of follow-up to discount the alleged intensity and persistence of her migraines, Social Security guidance required consideration of possible reasons she didn't seek or pursue additional treatment consistent with her complaints. *See* SSR 16-3p, 81 Fed. Reg. at 14170 ("We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints."); *Shanger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) ("Although a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference.") Here, the decision doesn't show consideration of record evidence that Ms. Jackson reported that a panic attack and anxiety previously prevented her from seeking medical treatment [R. 259, 262, 278]. Perhaps there is an explanation for crediting one view over another; but, on this record, the court cannot tell whether the decision accounted for this potential explanation (or any other explanations) before seemingly relying on the absence of further treatment. Remand is warranted for this reason too.

Ms. Jackson advances other arguments regarding the RCF determination and the ALJ's reliance on her own lay opinions of the evidence. But because the decision erred by not properly

considering Ms. Jackson's subjective statements and symptoms against the backdrop of objective evidence, the court need not address these other arguments. Proper analysis of her statements and symptoms may alter both the RFC and the ALJ's analysis, and any additional concerns about playing doctor, as the argument goes, might well have the opportunity for additional thought.

## CONCLUSION

Accordingly, the court GRANTS Ms. Jackson's request for a remand [1] and REMANDS the Commissioner's decision for consideration in light of this ruling.

SO ORDERED.

September 29, 2026

*s/ Damon R. Leichty*
Judge, United States District Court